**BURT et al. v. ST. PAUL MUT. HAIL & CYCLONE INS. CO. (No. 8536.)**

(Court of Civil Appeals of Texas. Galveston. June 5, 1924. Rehearing Denied June 26, 1924.)

**1. Insurance ⬅26—Foreign insurance company not required to allege and prove that it had obtained certificate to do business.**

Regardless of Rev. St. art. 4761, requiring a foreign insurance company to procure a certificate from the Commissioner of Insurance, and article 4966 and Pen. Code 1911, art. 643, imposing penalties, a foreign insurance company in suing does not have to allege and prove that it has obtained certificate authorizing it to do business within the state.

**2. Contracts ⬅138(6)—Unnecessary to plead illegality of contract appearing in evidence.**

In an action by foreign insurance company against agents to recover premiums paid to them, if it appears from the evidence that plaintiff's cause of action is founded on an unlawful contract, its rights thereunder cannot be enforced, and defendants need not plead the illegality of the contract.

**3. Insurance ⬅26—Contract by foreign insurance company, legal on its face, presumed to have been legally made and entitled to enforcement.**

In an action by a foreign insurance company on a contract by it, legal on its face, the contract should be presumed to have been legally made and entitled to enforcement; there being no statute denying such a company's right to maintain suit without alleging and showing that it had a certificate to transact business in the state.

**4. Insurance ⬅26—Allegation that foreign insurance company had permit to do business in state sufficient on general demurrer.**

In an action by a foreign insurance company, an allegation that company had a permit to do business in the state, in absence of an exception thereto, was a sufficient allegation that the certificate of authority to transact insurance business required by Rev. St. art. 4761, had been obtained, as against a general demurrer.

**5. Insurance ⬅26—Inference that foreign insurance company had obtained certificate to transact business in state held reasonable.**

In an action by foreign insurance company against its agents, under the contract, defendants' answer, and the evidence, held, that it was a reasonable inference that plaintiff had obtained the certificate to do business required by Rev. St. art. 4761.

**6. Insurance ⬅83(1)—On proof of amount due plaintiff, defendant must plead and prove payments made.**

In an action by foreign insurance company against its agents to recover premiums paid them, when plaintiff proved the amount for which defendants became liable to it under the contract it established prima facie case, and it then devolved upon defendants to plead and prove such payments as they had made, and,

not having done so, they could not object that statement introduced by plaintiff was not original evidence.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action by the St. Paul Mutual Hail & Cyclone Insurance Company against H. C. Burt and another. From judgment for plaintiff, defendants appeal. Affirmed.

Vinson, Elkins, Wood & Sweeton, of Houston, for appellants.

H. H. Cooper, of Houston, and Beall, Worsham, Rollins, Burford & Ryburn, of Dallas, for appellee.

PLEASANTS, C. J. This is a suit by the appellee to recover from appellants, who compose the firm of Burt & Stebbins, the sum of $6,456.69 with interest thereon from July 1, 1920, alleged to be due appellee as its portion of insurance premiums collected by appellants as its agents and not turned over to appellee by them in accordance with the terms of the contract of agency. Appellee alleged that on December 29, 1919, it entered into a contract with appellants known as the Texas state agents' contract, under the terms of which appellants were to perform the duties of state agents for the appellee, and no other hail insurance company, in handling the insurance business of appellee in the state of Texas, and that of the business handled by appellants they were to remit to appellee 77½ per cent. in cash or bank certificates of the premiums received by them; and that while appellants were in the discharge of their duties as state agents, they collected in premiums the total sum of $19,626.28, and that they remitted to appellee for such business the sum of $13,-469.59, thus leaving a balance of $6,456.69 due, which they appropriated to their own use and benefit. The appellants answered by general demurrer and general denial, and by plea in reconvention sought to recover damages against appellee. After the plaintiff had concluded its evidence, and no evidence being offered by the defendants, the trial court instructed the jury to return a verdict in favor of the plaintiff, and in accordance with the verdict so returned rendered judgment in favor of plaintiff for the sum of $7,263.77.

Only two questions are presented by this appeal, which is predicated upon the following propositions:

(1) "A foreign insurance corporation invoking the jurisdiction of the state courts must allege and prove that it had complied with the law in obtaining a certificate of authority from the commissioner of insurance and banking authorizing it to do business in this state."

(2) "In an action involving book accounts. the books containing the original entries is the best evidence, and other evidence of the ac-

count is not admissible unless the original books are lost, destroyed, or their absence otherwise satisfactorily accounted for."

[1] We do not think the first of these propositions is sound. Article 4761 of our statutes requires every insurance company, before engaging in the insurance business in this state, to procure from the commissioner of insurance a certificate showing that it has complied with all of the insurance laws of this state and authorizing it to conduct its business in this state, which certificate of authority shall expire on the last day of February in each year, and renewals thereof can only be granted on the same terms and considerations as the original. Other articles of our statutes prescribe the terms and considerations upon which such certificate may be issued, and provide for its publication. Article 4966 provides for a penalty for failure to comply with all the provisions of this statute. Article 643 of our Penal Code makes it unlawful for any person to violate any of the insurance laws of this state under penalty of a fine of not less than $500 nor more than $1,000.

[2] If it appeared from the evidence in this case that appellee's cause of action was founded upon an unlawful contract, its rights thereunder could not be enforced, and it was not necessary for appellants to plead the illegalty of the contract. Pasteur Vaccine Co. v. Burkey, 22 Tex. Civ. App. 232, 54 S. W. 805; Bishop v. Japhet (Tex. Civ. App.) 171 S. W. 499; Coal Co. v. Lawson, 89 Tex. 394, 32 S. W. 871, 34 S. W. 919; Republic Trust Co. v. Taylor (Tex. Civ. App.), 184 S. W. 773.

It is not claimed by appellants that the evidence in this case shows that appellee had no certificate authorizing it to do business in this state when it wrote the insurance on which the premiums collected by appellants and wrongfully retained by them were paid, but they contend that to entitle appellee to recover it was required to allege and prove that at the time such insurance was written it had such certificate, and that the evidence fails to establish this fact.

We think neither of these contentions is sound.

Article 1318 of our Statutes denies to any foreign corporation the right to maintain a suit in any of the courts of this state unless, at the time the contract on which the suit is brought was executed or the transaction on which the cause of action is based occurred, such corporation had complied with the provisions of the statute requiring it to file its articles of incorporation with the secretary of state for the purpose of securing a permit to do business in this state. Under this article it has been held by our courts that to entitle a foreign corporation to maintain a suit in the courts of this state it must allege and prove that it had complied with our statutes requiring it to obtain a permit to do business in this state. Tabor v. Loan Association, 91 Tex. 92; Rexall Drug Co. v. Butler (Tex. Civ. App.) 185 S. W. 989. This is certainly a reasonable, if not necessary, construction of the language of the statute above cited; but these decisions can have no application to foreign insurance companies, because by article 1319 of this statute it is expressly provided that the provisions of article 1318 shall not apply to such companies.

[3] There being no statute in this state denying appellee the right to maintain this suit without alleging and showing that it had a certificate to do business in this state, any contract legal on its face should be presumed to have been legally made and entitled to enforcement by the courts. As before shown, if it should develop on the trial of a case that the contract sued on, while prima facie legal, was founded upon an unlawful consideration or made in violation of law, it could not be enforced, although such illegality is not pleaded by the defendant. But no such showing is made by the evidence in this case. On the contrary, if we are wrong in the holding that appellee was not required to allege and prove that it had the certificate of authority to do business in this state, we think this fact was sufficiently alleged and proven.

[4] The petition alleges that—

"The plaintiff is a corporation incorporated under the laws of the state of Minnesota, with a permit to do business in the state of Texas."

Other allegations of the petition show conclusively that the business of plaintiff is that of insurance. There was no exception to the petition, and as against a general demurrer the allegation that plaintiff had a permit to do business in this state is a sufficient allegation that it had obtained the certificate of authority required by the statute for the carrying on of its insurance business in this state.

[5] The contract between appellee and appellants contains the following provisions:

"The party of the first part agrees to make application to the state insurance department for license to transact business of hail and cyclone insurance in the state of Texas on or before the tenth day of January, 1920, and to pay all licenses, taxes, and fees in connection therewith and renew its license anually thereafter during the life of this contract. This contract as made is entirely dependent upon receipt of Texas license and renewals of same, and the party of the first part does by these presents extend to the party of the second part full power and authority to act as its representative in the transaction of all insurance business written or handled by the party of the first part in said state, except reinsurance, if any, to collect moneys for the payment of insurance premiums and do all things necessary for the successful conduct of its business in said state."

This contract was executed on December 29, 1919.

The policies of insurance upon which the premiums claimed by appellee was paid were issued during 1920.

Appellants in their amended answer alleged:

"That they were authorized to write and cause to be written hail insurance in the state of Texas."

The provision in the contract between the parties before set out shows that it was the declared intention of both parties not to engage in the business until the certificate of authority had been obtained. No insurance was written until after the time the certificate was to have been obtained under the provisions of the contract, and appellants themselves allege that they were authorized to write insurance for appellee in the state of Texas, which could not be true unless appellee had obtained the certificate of authority.

In addition to these circumstances, on July 20, 1920, appellants, in reply to a letter from appellee telling them that unless they remitted by July 21st the amount due by them to it appellee would notify the state (authorities) and have appellants' (agents') license revoked, say:

"As to notifying the insurance department of this state, this would not assist you in any way, and if you attempt anything of this kind I am quite sure that it will be within our power to prevent your company from being licensed in Texas after this year."

We think it is a reasonable inference, from these facts disclosed by the record, that appellee had complied with its contract with appellants, and its legal obligation independent of its contract, and obtained the certificate necessary to enable it to legally carry on its business in this state.

[6] Appellants' second proposition is abstractly sound, but we do not think the rule of evidence thereby invoked was violated in the trial of this case. The record offered in evidence by the appellee, showing the amount of premiums collected by appellants, was the original policy register showing the number and amount of policies and the premiums charged thereon. It is not clear from the testimony whether the written evidence of the payments made by appellants of the premiums collected by them was the original record of such payments. But appellee did not base its suit upon an open or running account between it and appellants like an account between merchant and merchant, or between a merchant and a customer, but sued on a contract by which appellants obligated themselves to remit to appellee 77½ per cent. of the premiums of all policies issued by appellee and received and delivered by appellants as appellee's agents. When appellee proved the amount for which appellants became liable to it under this contract, it established a prima facie case against appellants, and it then devolved upon them to plead and prove such payments as might have been made by them under their contract.

The original policy register showed a much larger amount than that claimed by appellee, and appellants by letter of June 9, 1920, after this controversy arose, admitted that the balance then due appellee was $14,995.82. No contention is made by appellants that they subsequently made any payments to appellee which is not shown on the statement offered in evidence by appellee, but they make the technical objection to such statement that it is not original evidence. It seems clear to us that such objection is not available to appellants.

We are of opinion that the judgment should be affirmed, and it has been so ordered.

Affirmed.